UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOUP PARTNERS, LLC,<br><br>                              Plaintiff,<br><br>                    -v.-<br><br>HUNTERS POINT AGENCY LLC,<br><br>                              Defendant. | 23 Civ. 213 (JHR)<br><br><u>OPINION & ORDER</u> |

JENNIFER H. REARDEN, District Judge:

On December 12, 2022, Plaintiff Doup Partners, LLC brought this action against Defendant Hunters Point Agency LLC in the Supreme Court of the State of New York, County of New York.  ECF No. 1-1 (Compl.).  Defendant removed the case to this Court on January 10, 2023.  ECF No. 1 (Not. of Removal).  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant moved to dismiss the Fourth and Fifth Claims for Relief in the Complaint.  ECF No. 33 (Mot.).  The Court granted Defendant's motion.  ECF No. 40.  This Opinion & Order sets forth the context and bases for that ruling.

## BACKGROUND

Unless otherwise noted, the following allegations are drawn from the Complaint.  For purposes of adjudicating this motion, these allegations were assumed to be true and construed in the light most favorable to Plaintiff.  *See, e.g.*, *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013).

On April 22, 2022, Plaintiff and Defendant entered into a Master Services Agreement ("MSA") whereby Defendant would provide "creative, strategic, coordination, design, production, and technical services to help [Plaintiff] achieve its goal of opening a pop-up event titled Museum of Women ('MOW') in SOHO, New York City."  Compl. ¶ 1.  The MSA contemplated that Defendant would perform services for Plaintiff as set forth in one or more

Statements of Work (the "SoW") attached to the MSA and that Defendant would provide specified Deliverables to Plaintiff. *Id.* ¶ 28.

After nearly two months of "supposed work," *id.* ¶ 5, and payment of more than $1,000,000 in fees and expenses by Plaintiff, no significant progress had been made toward opening the MOW. *Id.* As of the filing of the Complaint, the MOW still had not opened due to delays in the project. *Id.* ¶ 6. Plaintiff averred that, of the more than $1,000,000 that Plaintiff had paid to Defendant, only approximately $250,000 was supported by vendor invoices and deliverables—and that the remaining balance was unaccounted for and unsupported by any proof of work, deliverables, or documentation. *Id.* ¶ 7. Plaintiff terminated the MSA on July 18, 2022 based on Defendant's alleged lack of performance. *Id.* ¶ 8. Following termination of the MSA, Defendant continued to improperly spend money on the project, and Defendant refused to return the unused portion of the fees and expenses paid by Plaintiff and sent Plaintiff requests for additional payment. *Id.* ¶ 9.

In December 2022, Plaintiff filed in the Supreme Court of the State of New York, County of New York a six-count complaint seeking over $1,000,000 paid to Defendant based on Defendant's false promises and misrepresentations that it could deliver the MOW to Plaintiff. *Id.* ¶ 10, 53-97. The Claims for Relief not subject to Defendant's motion to dismiss are as follows: Claim One, which alleges breach of the MSA for failing to (1) perform services as required under the SoW, (2) have the MOW open to the public by June 29, 2022, (3) hold a weekly Executive Meeting, and (4) provide Supporting Documentation for Audit Review, even upon request from Plaintiff; Claim Two, which alleges breach of the MSA for failing to avoid incurring additional costs and for continuing to request payment from Plaintiff after Plaintiff terminated the MSA; Claim Three, which alleges breach of the MSA for failing to invoice

Plaintiff for all fees and expenses incurred and to return excess fees and expenses to Plaintiff; and Claim Six, which alleges unjust enrichment for Defendant's failure to provide services to Plaintiff in exchange for more than $1,000,000 in fees and expenses and Defendant's failure to return the excess fees and expenses to Plaintiff.  *Id.* ¶¶ 53-74, 92-97.

Defendant challenged Claim Four of the Complaint, for fraud, which alleged that Defendant made "false representations in order to deceive [Plaintiff] into continuing to make payments to [Defendant]"; that Plaintiff "relied on these false representations in continuing to make payments to [Defendant]"; and that, "[a]s a direct and proximate cause of [Defendant]'s actions, [Plaintiff] ha[d] suffered monetary damages." *Id.* ¶¶ 82-84.  These alleged false representations included that Defendant "had the skill, experience, and expertise to complete the MOW"; "could provide the creative, strategic, coordination, design, production, and technical expertise and advice that [Plaintiff] required in order to open the MOW"; "had been part of similar projects in the past—even having allegedly created some of the spaces that [Plaintiff] presented to [Defendant] as inspiration for the MOW"; "was an 'industry' expert"; and "could complete the MOW to [Plaintiff]'s specifications within the budget and time frame agreed to by the parties." *Id.* ¶¶ 76-80.  Plaintiff also averred that Defendant had "manufactured documents and information to justify [Plaintiff]'s payment of fees and expenses in excess of $1,000,000, including that [Defendant]: [f]alsely quoted information from contractors and subcontractors to hide the true cost of the quotes; [f]alsely manufactured quotes from contractors and subcontractors to hide the true cost of the quotes; and [f]alsely manufactured accounting information to hide true cost information." *Id.* ¶ 81.

Defendant also challenged Claim Five of the Complaint, for negligent misrepresentation, which claimed that, "[b]y virtue of their contractual relationship, [Defendant] agreed to provide

3

correct information to [Plaintiff]" yet "misrepresented" (1) "that it had the skill, experience, and expertise to complete the MOW" and (2) "the true amount of fees and expenses incurred by [Defendant] under the MSA." *Id.* ¶¶ 86-88. Defendant "made these misrepresentations to get [Plaintiff] to pay fees and expenses to [Defendant] under the MSA, which [Defendant] did not earn," and "[Plaintiff] relied on these misrepresentations in paying over $1,000,000 in fees to [Defendant]." *Id.* ¶¶ 89-90. As a direct and proximate cause of Defendant's negligent misrepresentations, Plaintiff suffered monetary damages. *Id.* ¶ 91.

On January 10, 2023, Defendant removed the action to this Court. Not. of Removal. On January 17, 2023, Defendant moved to dismiss the Fourth and Fifth Claims for Relief in Plaintiff's Complaint, with prejudice, for failure to state a claim upon which relief could be granted pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 5. Plaintiff filed a memorandum of law in opposition to the motion on January 31, 2023. ECF No. 6. On February 7, 2023, Defendant filed a reply memorandum in further support of its motion to dismiss. ECF No. 10. On February 10, 2023, in a Notice to Attorney to Re-File Document, the Clerk of Court noted filing issues with the motion to dismiss at ECF No. 5, terminated the motion, and directed Defendant to refile. Defendant did not do so.

On August 22, 2023, the Court held a conference in which it stated that, due to those filing errors, the motion to dismiss had not been properly placed before the Court—and that the motion would not be ready for review and adjudication until the filing deficiencies were corrected. ECF No. 37 (August 22, 2023 Conference Transcript) at 3.

On August 23, 2023, Defendant refiled its motion to dismiss the Fourth and Fifth Claims for Relief in Plaintiff's Complaint, with prejudice, for failure to state a claim. Mot. at 1. Also on August 23, 2023, Plaintiff filed a memorandum of law in opposition to the refiled motion to

dismiss.  ECF No. 35 (Opp.).  Defendant filed a reply memorandum of law on August 24, 2023.  ECF No. 36 (Reply).

On March 31, 2024, upon consideration of the parties' written submissions, the Court granted Defendant's Motion to Dismiss the Fourth and Fifth Claims for Relief.  ECF No. 40.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Yoomi Babytech, Inc. v. Anvyl, Inc.*, No. 20 Civ. 7933 (ER), 2021 WL 4332258, at *11 (S.D.N.Y. Sept. 22, 2021) (quoting *Ashcroft*, 556 U.S. at 678).  "The plaintiff must allege sufficient facts to show 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Id*. at *5 (quoting *Ashcroft*, 556 U.S. at 678).  "However, this 'flexible plausibility standard' is not a heightened pleading standard, and a complaint does not need detailed factual allegations to survive a motion to dismiss."  *Id*. (quoting *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks omitted)).

"The question in a Rule 12(b)(6) motion to dismiss 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Id*. (quoting *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012)).  "'The purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,' and without regard for the weight of the evidence that might be offered in

support of plaintiffs' claims." *Id*. (quoting *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011)).

"Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts

all factual allegations in the complaint as true and draws all reasonable inferences in the

plaintiff's favor." *Id*. "'For purposes of this rule, the complaint is deemed to include any written

instrument attached to it as an exhibit or any statements or documents incorporated into it by

reference.'" *Id*. (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

"Beyond the requirements of Rule 12(b)(6), a complaint alleging fraud must satisfy the

heightened pleading requirements of Federal Rule of Civil Procedure 9(b) by stating the

circumstances constituting fraud with particularity." *Id.* (citing *ECA & Local 134 IBEW Joint

Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009)). "The

particularity requirement of Rule 9(b) serves to 'provide a defendant with fair notice of a

plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing,

and to protect a defendant against the institution of a strike suit.'" *Rombach v. Chang*, 355 F.3d

164, 171 (2d Cir. 2004) (quoting *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676

(2d Cir.1991)).

## DISCUSSION

### A.    Plaintiff's Fraud Claim Is Duplicative of Its Breach of Contract Claims.

"'To prove fraud under New York law, a plaintiff must show that (1) the defendant made

a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the

plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a

result of such reliance.'" *Yoomi Babytech, Inc.*, 2021 WL 4332258, at \*11 (quoting

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996)). In

addition, "New York law generally requires that a fraud claim raised in the context of a contract

6

dispute be 'sufficiently distinct from the breach of contract claim.'" *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 162 (E.D.N.Y. 2012) (quoting *Bridgestone/Firestone*, 98 F.3d at 20). "A fraud claim generally will not lie if it arises 'out of the same facts as plaintiff's breach of contract claim.'" *Id.* (quoting *Telecom Int'l Am., Ltd. v. AT & T Corp.,* 280 F.3d 175, 196 (2d Cir. 2001)). "However, parallel fraud and contract claims may be maintained if the plaintiff: '(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages.'" *Id.* (quoting *Bridgestone/Firestone*, 98 F.3d at 20).

"As to the first factor," Plaintiff did "not allege[] any independent duty on the part of . . . Defendant[] beyond [its] duty to perform under the contract." *Yoomi Babytech, Inc.*, 2021 WL 4332258, at *11. Similarly, regarding the third factor, Plaintiff "d[id] not allege damages for losses other than those connected to . . . [Defendant]'s alleged breach of contract." *Compass Prods. Int'l LLC v. Charter Commc'ns, Inc.*, No. 18 Civ. 12296 (VM), 2019 WL 4198586, at *8 (S.D.N.Y. Aug. 8, 2019).

With respect to the second factor—the "demonstrat[ion] [of] a fraudulent misrepresentation [as] collateral or extraneous to the contract," *Bridgestone/Firestone*, 98 F.3d at 20—Plaintiff averred that "[Defendant] represented . . . that it had the skill, experience, and expertise to complete the MOW"; "could provide the creative, strategic, coordination, design, production, and technical expertise and advice that [Plaintiff] required in order to open the MOW"; "had been part of similar projects in the past—even having allegedly created some of the spaces that [Plaintiff] presented to [Defendant] as inspiration for the MOW"; "was an 'industry' expert"; and "could complete the MOW to [Plaintiff]'s specifications within the

7

budget and time frame agreed to by the parties." Compl. ¶¶ 76-80. Such allegations "[we]re [not] enough to state misrepresentations of material fact that [we]re collateral to the contract." *Yoomi Babytech, Inc.*, 2021 WL 4332258, at \*11. "Courts in this Circuit, applying New York law, routinely dismiss fraud claims based on a promisor's statements that they intended to or were capable of performing under a contract as duplicative of breach of contract claims." *Id*. (citing *Bridgestone/Firestone*, 98 F.3d at 19-20) (affirming dismissal of fraud claim based on "intentionally-false statements . . . indicating . . . intent to perform under the contract" as insufficient under New York law); *Telecom Int'l*, 280 F.3d at 196 (affirming dismissal of fraud claims arising from AT&T representative's statement that the company "had experience with systems 'similar'" to those required by plaintiff); *Verus Pharms., Inc. v. Astrazeneca AB*, No. 09 Civ. 5660 (BSJ), 2010 WL 3238965, at \*11 n.12 (S.D.N.Y. Aug. 16, 2010), *aff'd*, 427 F. App'x 49 (2d Cir. 2011) (dismissing fraud claims where "purportedly fraudulent representations all relate[d] to Defendants' intent and ability to perform [certain] contractual obligations.")).

Plaintiff argued that its "fraud allegations [we]re not based on [Defendant]'s performance of its obligations under the MSA, but rather [on] fraudulent actions that [Defendant] took extraneous to the MSA." Opp. at 6. According to Plaintiff, those fraud allegations centered on "material misrepresentations made by [Defendant] intended to hide the lack of work performed by [Defendant] and the extraordinary and unsupported fees and expenses that it attributed to fabricators and vendors." *Id*. Defendant's purported misrepresentations included "[f]alsely quoting information from contractors and subcontractors to hide the true cost of the quotes; [f]alsely manufacturing quotes from contractors and subcontractors to hide the true cost of the quotes; and [f]alsely manufacturing accounting information to hide true cost information." *Id*.

8

"[I]t is well settled that in order for a fraudulent misrepresentation to be considered separate from a contract, it 'must promise to do something other than what is expressly required by the contract.'" *Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*, No. 14 Civ. 804 (RWS), 2014 WL 3857053, at *16 (S.D.N.Y. Aug. 5, 2014) (quoting *W.B. David & Co., Inc. v. DWA Commc'ns, Inc.*, No. 02 Civ. 8479 (BSJ), 2004 WL 369147, *5 (S.D.N.Y. Feb. 26, 2004)). "The mere fact that Defendant[] allegedly sent false invoices to . . . Plaintiff[] after the consummation of their agreement is not sufficient to make these alleged 'statements' collateral or extraneous to the agreement between the parties." *W.B. David & Co.*, 2004 WL 369147, at *5. "The payment for services rendered, or not rendered, was a requirement of the contract, and any failure to perform the services paid results in a breach of contract claim." *Id.* "Any statements regarding 'accounting' would similarly relate specifically and directly to the [a]greement and the Plaintiff's claimed right to payment under the [a]greement." *LaRoss Partners*, 874 F. Supp. 2d at 163 (deeming "[p]laintiff's breach of contract claim . . . duplicative of its fraud claim" where the "alleged misrepresentations . . . concern whether the [d]efendants falsely claimed that there were no net revenues . . . and consequently whether the [p]laintiff was entitled to any payments pursuant to the [a]greement").[1]

---

[1] In at least one instance, *see Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 521 (S.D.N.Y. 2016), a court in this District has deemed allegedly inflated invoices sufficiently collateral to a contract to sustain a claim for fraud under New York law. *Minnie Rose* is distinguishable in at least two respects. First, the contract in *Minnie Rose* "required Plaintiffs to pay for the cost of manufacturing plus a 10% commission." *Id.* Rather than "allege that Defendants [had] failed to perform under the . . . agreement," *see id.*, Minnie Rose only brought a fraud claim: "that Defendants [had] actively concealed the actual price of manufacturing each time they sent Plaintiff invoices." *Id.* In part for that reason, the court concluded that the "alleged fraud" was "collateral to the contract." *Id.* Here, in contrast, Plaintiff alleged that Defendant had failed to perform under the agreement. *See* Compl. ¶¶ 53-74. And Plaintiff's fraud claim addressed substantially the same conduct as its breach claims: whether Defendant had properly billed

Plaintiff.  *See* ECF No. 49 (Opp. to Motion for Leave to Amend) ("Finding that DOUP's claims for fraudulent misrepresentation are collateral would essentially be holding that the MSA payment terms, billing methods, parameters of the work performed, and amounts charged to DOUP were not material to the underlying agreement.  These . . . are essential and material to the underlying contract, and form the basis for DOUP's breach of contract claims.").

In addition, the *Minnie Rose* court viewed "[t]he terms of the oral agreement between the parties [as] straightforward." 169 F. Supp. 3d at 521.  In the case at bar, Plaintiff did not allege that a simple agreement tied Defendant's compensation to underlying (sub)contractor expenses. Instead, Plaintiff averred that the contract required a series of lump-sum payments to Defendant without that contract mentioning how, if at all, invoices would account for (sub)contractor costs. *See, e.g.,* Compl. ¶¶ 33-36 (Plaintiff alleging the existence of an SoW Budget; an agreement to invoice according to a certain schedule; an installment payment schedule; and Defendant's "agree[ment] to return excess fees to DOUP 'to the extent [that] any of the Services outlined in the SoW [we]re performed for less than the fees and expenses set forth in the SoW.'" (quoting the MSA)); MSA § 5 (stating that "[Plaintiff] will pay [Defendant] all fees and expenses as outlined [in the MSA] or in a SoW or Change Order"—and that "[t]he fees and expenses will be invoiced by [Defendant] to [Plaintiff] at least a week prior to the due date for such payment as indicated in [the SoW]"—but not addressing whether such invoices should contain quotes from (sub)contractors or an accounting of Defendant's mark-ups of such quotes); SoW § 3 (stating that, "[f]or the services outlined in this SoW, [Defendant] will be compensated as follows," and then listing several line items with no mention of sub(contractor) quote accounting or a mark-up percentage); SoW § 4 (stating that "[a]mounts owed to [Defendant] under this SoW will be invoiced and paid as follows," and then listing several installment amounts to be paid to Defendant with no mention of (sub)contractor quote accounting or a mark-up percentage). Although the MSA contains a provision requiring Defendant "to retain copies of contracts, permits, application [*sic*], invoices, and information relating to [its] [s]ervices (the 'Supporting Documentation')" for Plaintiff to review, the process by which Plaintiff would do so is not straightforward.  *See* MSA § 1 (identifying various procedures for review of the materials, all of which would require significant coordination between the parties, and only expressly addressing a situation in which "[Plaintiff] wish[ed] to review a portion but not all of the Supporting Documentation").

In short, according to Plaintiff, Defendant "fraudulently manufactured information and reports in order to justify the extraordinary amount of money that DOUP ha[d] paid" to Defendant, including, *inter alia*, "falsely quoting information from contractors and subcontractors to hide the true cost of quotes."  Compl. ¶ 49.  But absent a "straightforward" contractual term that Defendant's alleged concealment was intended to fraudulently subvert, such as the exact percentage mark-up in *Minnie Rose*, those allegations reflect a disagreement about billing terms—terms that the contract left open to dispute and that could be explained by interpretive differences rather than by fraud.  Accordingly, Plaintiff's fraud claim is duplicative of its breach claims.  *See W.B. David*, 2004 WL 369147, at *4-5 ("The alleged misrepresentations complained of, *i.e.,* the alleged improper billing statements by Defendants, [went] to the heart of the agreement between the parties.  Namely, the rendering of services for a fee, or as Plaintiff contend[ed,] the failure to render services as agreed . . . .  Since the alleged fraud ar[ose] out of

10

**B.    Plaintiff's Fraud Claim Lacks Sufficient Particularity.**

"[Plaintiff]'s fraud-based claims also fail for the independent reason that they are not

pleaded with the particularity required under Rule 9(b)." *Yoomi Babytech, Inc.*, 2021 WL

4332258, at *12; *see Diesenhouse v. Soc. Learning & Payments, Inc.*, No. 20 Civ. 7436 (LJL),

2022 WL 3100562, at *8 (S.D.N.Y. Aug. 3, 2022) ("Claims for common law fraud under New

York law must . . . satisfy the heightened pleading requirements of Rule 9(b) and be pleaded

'with particularity.'") (quoting Fed. R. Civ. P. (9)(b)).  "The plaintiff must '(1) specify the

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id.*

(quoting *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).  "Particularity 'means the who,

what, where, when and how: the first paragraph of any newspaper story.'" *Id.* (quoting

---

the same facts that form[ed] the basis for . . . Plaintiff['s] cause of action for breach of contract,
Plaintiff[] ha[s] failed to state [a] cause of action for fraud."); *IKEA N. Am. Servs., Inc. v. Ne.
Graphics, Inc.*, 56 F. Supp. 2d 340, 342 n.2 (S.D.N.Y. 1999) ("[V]irtually every dispute over
breach of contract involves an allegation that the breaching party has lied about its performance.
It would materially chill commerce if every time a contracting party suffered what it believed
was a breach of performance[,] the party could also bring a tort claim for fraud.").

Hewing closely to the facts and reasoning of *Minnie Rose*, a recent S.D.N.Y. case sustained a
fraud claim alleging misrepresentations in invoices, among other materials.  *See Nielsen
Consumer LLC v. Circana Grp., L.P.*, No. 22 Civ. 3235 (JPO), 2026 WL 380810 (S.D.N.Y. Feb.
11, 2026) ("Indeed, the allegations in the Complaint [in *Nielsen*] are comparable to the
allegations present in *Minnie Rose LLC v. Yu*, in which this Court held that 'Defendants actively
misrepresented present facts' by 'actively conceal[ing] the actual price of manufacturing each
time they sent Plaintiff invoices.'" (quoting *Minnie Rose*, 169 F. Supp. 3d at 520-21)).  In
*Nielsen*, the plaintiff "allege[d] that [the defendant] [had] concealed and misrepresented present
facts as to its [redacted product]."  2026 WL 380810, at *6.  In holding that the "plaintiff's fraud
claim survive[d] alongside [its] contract claim," *Nielsen*, 2026 WL 380810, at *6, *Nielsen* relied
on *Minnie Rose*'s statement that "[m]isrepresentations of present facts made post-contract
formation are collateral or extraneous to the contract and are actionable in fraud," 169 F. Supp.
3d at 520.  Although the particular misrepresentations at issue are under seal, it seems clear that,
as in *Minnie Rose*, they involved false statements in invoices and other materials that were meant
to circumvent "straightforward" contractual terms.  169 F. Supp. 3d at 521.  No such allegations
were made here.

*Antigenics Inc. v. U.S. Bancorp Piper Jaffray, Inc.*, 2004 WL 51224, at *3 (S.D.N.Y. Jan. 9, 2004)). "Rule 9(b) also requires a plaintiff to allege facts that give rise to a strong inference of fraudulent intent." *Id.* (quoting *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 687 (S.D.N.Y. 2021) (internal quotation marks omitted).

The Complaint "d[id] not identify the alleged misrepresentations with particularity." *Id.* It "d[id] not identify exactly when those misrepresentations were made . . . [and] merely state[d] that [some of the misrepresentations] were made," *id.*, "in connection with the Audit Review, and at various other times," Compl. at 13-14, while providing no chronological information whatsoever with respect to other misrepresentations. *See Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 462 (S.D.N.Y. 2021) (deeming allegations that a party made misrepresentations "during this time" and "throughout the negotiations" insufficiently specific about when the statements were made and therefore lacking the necessary particularity to state a fraud claim under New York law). "The . . . Complaint also d[id] not allege whether the misrepresentations were made in person, in writing, or some other medium, or where the alleged misrepresentations were made." *Diesenhouse*, 2022 WL 3100562, at *8 (citing *Optima Media Grp. Ltd. v. Bloomberg L.P.*, 383 F. Supp. 3d 135, 143 (S.D.N.Y. 2019) (finding allegations insufficient where they do not "identify the continent, much less the city, in which the communications were made" and do not "offer an estimate of the number of such communications, or whether they were made 'in person, over the phone, or by email'" (internal quotation marks and citation omitted))).

**C.** **Plaintiff's Negligent Misrepresentation Claim Is Duplicative of Plaintiff's Breach of Contract Claim.**

"Plaintiff's claim for negligent misrepresentation fail[ed] for the same reasons as its claim for fraud . . . ." *Protex Indus. (H.K.) Ltd. v. Vince Holding Corp.*, 748 F. Supp. 3d 234,

254 (S.D.N.Y. 2024). "As a general rule, a claim for negligent misrepresentation is precluded in a breach of contract action unless a legal duty independent of the contract itself has been violated." *Id*. (internal quotation marks omitted). "Plaintiff's negligent misrepresentation cause of action [wa]s based on the exact same allegations as its fraud . . . claim, which—as previously noted—[wa]s based on the same allegations as Plaintiff's breach of contract claim." *Id*. at 254-55. "As with its fraud . . . claim, with respect to its negligent misrepresentation claim, Plaintiff similarly fail[ed] to allege a legal duty springing from circumstances extraneous to, and not constituting elements of, the [contract] upon which its breach of contract claim[s] [were] based." *Id*. (citation and quotation marks omitted). In fact, the only legal duty referenced in Plaintiff's negligent misrepresentation claim arose directly from the contract. *See* Compl. ¶ 86 ("*By virtue of their contractual relationship*, [Defendant] agreed to provide correct information to [Plaintiff].") (emphasis added). "Accordingly, Plaintiff's negligent misrepresentation claim . . . [wa]s dismissed as duplicative of its breach of contract claim[s]." *Protex Indus. (H.K.) Ltd.*, 748 F. Supp. 3d at 254.

## D.    Leave to Amend Is Granted.

"The Federal Rules of Civil Procedure provide that a court should 'freely give leave [to amend a complaint] when justice so requires.'" *CF2 Co., Ltd v. YOCO Inc.*, No. 19 Civ. 07774 (MKV), 2021 WL 4311150, at *1 (S.D.N.Y. Sept. 21, 2021) (quoting Fed. R. Civ. P. 15(a)(2)). "Under Rule 15, leave to amend should be given 'absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility.'" *Id*. (quoting *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000)). "The touchstone for futility is whether the proposed amendment would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)." *Id*. "[W]here, as here, a fraud claim is

duplicative of a breach of contract claim, [some] courts have deemed it 'futile' to grant leave to replead the fraud claim." *AFP Mfg. Corp. v. AFP Imaging Corp.*, No. 17 Civ. 3292 (NSR), 2018 WL 3329859, at *11 (S.D.N.Y. July 6, 2018); *see also Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265, 277 (S.D.N.Y. 2019) (denying leave to amend on the ground that a counterclaim for fraud and fraudulent inducement "would continue to be duplicative of [the] breach of contract counterclaim," which the court did not dismiss).  The same approach typically applies to a negligent misrepresentation claim that is duplicative of a breach of contract claim.  *See, e.g., Music Royalty Consulting, Inc. v. Reservoir Media Mgmt., Inc.*, No. 18 Civ. 9480 (CM), 2019 WL 1950137, at *9 (S.D.N.Y. Apr. 17, 2019) ("dismiss[ing] [negligent misrepresentation claim] with prejudice" where "negligent misrepresentation . . . claim[] [was], like the fraud claim, duplicative of [Plaintiff]'s breach of contract claim").

Here, however, the Court cannot rule out that Plaintiff may "ha[ve] at least colorable grounds for relief" in connection with its fraud and negligent misrepresentation claims.  *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block--Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979); *see Abbatiello v. Monsanto Co.*, 571 F. Supp. 2d 548, 552 (S.D.N.Y. 2008) (finding no prejudice to defendants where "plaintiffs do not seek to add new claims, discovery is not complete, and the parties are far from ready to prepare summary judgment motions"); Opp. to Motion for Leave to Amend (arguing that Plaintiff's amendment would be futile but not addressing prejudice).  Thus, the Court grants leave to amend.

## CONCLUSION

For the foregoing reasons, the Complaint's Fourth and Fifth Claims for Relief were dismissed.

Plaintiff's Motion for Leave to File to File an Amended Complaint, ECF No. 46, is GRANTED. By **March 27, 2026**, the parties shall file a letter or letters proposing next steps.

The Clerk of Court is directed to terminate ECF No. 46.


SO ORDERED.

Dated: March 13, 2026
       New York, New York


_____
JENNIFER H. REARDEN
United States District Judge

15